My name is Gary Huss. I am counsel for the appellant. I'd like to reserve about a minute and a half for possible rebuttal remarks. Watch your time and do so. I'd like to focus on the question raised by the court first as to the effect of Crawford, Melendez-Diaz, and Bullcoming. Those cases really aren't addressed in my brief other than a short reference to Crawford. I believe those cases supersede a lot of what I've argued in my brief in the Senate. It was very mysterious. I mean, both you and the government seem to have lost seven or eight years of Confrontation Clause jurisprudence. And it's difficult, hard stuff, and it wasn't very useful to us on either side. Unfortunately, in the quest to find a case on point, I was running across Ninth Circuit cases that have dealt with this issue before, where the focus was on reliability, trustworthiness, even the conduit theory. But I believe these newer cases override that and require a percipient witness to cross-examine. I think they require a meaningful opportunity to cross-examine the testimonial evidence. And in the alternative, if the witness is unavailable, that there was a prior opportunity to confront that. And that's what's absent in this case. The interpreter was there as a witness but remembered nothing. Well, why isn't that enough, though? I mean, under United States v. Owen, the fact that he was there, and Crawford seems to cite Owen and recognize that. As long as he's there, you can just cross-examine him and prove that he doesn't remember anything. So the other you could argue very well, then, that the other person is totally unreliable because the person who really knows doesn't remember anything. Why isn't that good enough? I don't think it's good enough because it doesn't provide a meaningful opportunity to dispute or confront what's coming into court through someone else who claims to remember, who has a version of what the percipient witness has no recollection of. Now, in this case, had there been a tape recording, had there been a transcript, had there been notes that would refresh Mr. Davalos's? That would be true. That would be true in any case, even if all of this conversation had been conducted in English. You would still have the same argument that the witness was unreliable in what he was remembering and it would be more useful if you had a tape recording or a transcription. That's always true. The question is whether you had a right to confront the translator, and the fact of the matter is you did have an opportunity to confront him, didn't you? Confront him. You had an opportunity to examine him if you wished. We had an opportunity to ask him some questions. He recalled being there. He didn't recall. The critical thing is we didn't have an opportunity. Well, that may make him useless as a witness, but it doesn't mean that you haven't had an opportunity to confront the witness. But the content, the evidence that's being used against the defendant, there was no meaningful opportunity to confront or challenge that because he has no memory of it. And what's happening is you allow another officer to say, well, I believe this is what the interpreter told me, and there's no independent verification of it. Well, you're talking about the actual wording, but you do have a chance to cross-examine as to his ability and talents and background and experience as an interpreter to make valid what might otherwise be an important part of the process. But it shouldn't shock anybody that the person didn't remember the words. When I was a district court judge, we did a lot of these. I bet not one of them remembered. They are just focusing upon translating from one language to another. It's a rarity when they remember in a day or two what they've done. If we accept your argument, when would we ever allow anything that's translated to come in? And I'm not sure even Justice Scalia goes that far. Well, I think if you adopt a rule that if the witness doesn't remember anything, that therefore that's an adequate opportunity to confront. That is what happened in the United States. And I think a lot of the rationale of Crawford. Sir, that is what happened in the United States v. Owen. There were two differences. It was pre-Crawford is one, if that makes a difference. I'm just you can tell me if it makes a difference. And the other is I believe in Owen the individual knew that he had said this thing but couldn't testify to its truth. So he could testify that he had earlier said something to someone else, but he couldn't testify whether it was true or not. Now, does that matter? Other than that, Owen is the same. The guy got up there and said, I don't remember. You have somebody testifying that Owen told me something, and you have Owen standing or not Owen, the witness, and the witness is sitting there saying, I don't remember anything. But I do remember I said this. Well, would the analysis be the same if a blood test or lab report came in and the lab technician who actually did it said, I don't remember doing that, and he has somebody else say, well, I know his work, I know the procedure, and therefore this is reliable. I think that's the situation you see in Bullcoming and Menendez-Diaz. But that is going to be the result in Bullcoming, isn't it? We're going to put lab technicians on the stand, and they're not going to remember. They did hundreds of vials that night, and they followed procedures, and they gave you a report, and whatever they said in the report is what they think it was, but they'll have no recollection of having run the test, will they? It doesn't mean you haven't had a right to confront them under the Constitution. Let me cut to the chase. To answer your question, if the witness shows up and doesn't remember, if that's deemed adequate opportunity to confront. Well, what he remembers is that I do these kinds of tests, and I don't certify them unless they're correct, and if I signed it, then it must be right, because otherwise I wouldn't have signed it. And this is my background as a lab technician, you know, and do you ever, you know, lose things and put them in the wrong place? No, I've never done that in 10 years. I mean, you can get all of that. Well, I have no further argument on that point. I think that there is no meaningful opportunity to confront when a witness says, I don't remember anything, and there is tremendous harm in allowing somebody else to say, well, I couldn't understand the language, but I think this is what. But you just put somebody on in front of the jury. This may be a strategic call on your part, but you just put a translator on the stand, asked him to verify, you know, what the defendant said, and he says, I have no recollection of this. I mean, you can use that to whatever advantage you wish. You may think it's useful. You may not think it's useful, but it is available to you. Nobody said it had to turn out perfectly. Well, certainly that's a different trial strategy that could have been considered, but I think the government has a burden to lay the foundation for the propriety of its evidence. I don't think that trial counsel is obligated here to continue to try to find a way to explore the lack of memory. Well, except there's a Supreme Court case. I mean, now there's another Supreme Court case that nobody is paying any attention to, so it's a little difficult to deal with an argument, a complicated case like this, if nobody is reading the case law. Okay. If you want to reserve some time, you can do that now. Thank you. Good morning, Your Honors. My name is Karen Escobar, and I was the attorney who handled the trial in this matter. We believe that Crawford does not apply to this case because the case does not involve the admission of testimonial statements under the exception to the hearsay rule. As the district court would say the case does not apply to the hearsay rule. There is no hearsay rule. We're not asking about the hearsay rule. We're asking about the Confrontation Clause. Right. The interpreter testified. I think Your Honor is correct in that the defense had the opportunity to question the interpreter that was the deputy who had. All right. But let's back up a minute because it matters. I mean, we have two cases on this calendar dealing with the predecessor question of does the Confrontation Clause as interpreted in Crawford and its successors apply to the translator's role at all such that if he hadn't been available, that would have been a Confrontation Clause problem. Number one, is that what is your position on that? Your brief is completely off in terms of talking about pre-Crawford law and assuming that the hearsay clause, the hearsay rules are dispositive and they're obviously not, so what is the proper analysis? Well, Crawford did indicate that non-hearsay, even if the Court believes that the non-hearsay translated statements are true. Now, I'm asking you. That's not what I believe. I'm asking you what the government's position is as to whether at the outset there is a Confrontation Clause problem if the translator has not, does not testify. Yes or no? There could be. But in our case, the translator did testify. Okay. So your position is yes, the translator has to, the government has to put on the translator in these cases. Well, that is not our position. Well, what is your position, then? We believe that Crawford does not apply in the context of non-hearsay statements where there's an interpreter who can be construed as a language, a mere language client. All right. So then why, that's what I want to know. Why is that your position? How does that fit under the Crawford line of cases? The statements of a defendant are admissible as statements of a, I know we're getting back to hearsay, of a party opponent. If the Court adopts the position that, consistent with your line of inquiry, no statements of a defendant would ever be admissible. There would be a Confrontation Clause issue in all cases. The defendant's ---- Well, but the problem is that the person who testified, the agent, wasn't testifying to the statements of the defendant. He was testifying to the statements of the translator about the statements of the defendant. We believe Nazeemian is still good law. And there is a case ---- But I suggest that, I mean, at least I need a coherent analysis under Crawford and the two laboratory cases by the U.S. Attorney's Office after some thought and not just bottom lines. And maybe there needs to be a supplemental brief that somebody in your office takes charge of and writes a coherent statement about. Well, Your Honor, both ---- But you haven't given us a reason. You've just given us a bunch of bottom lines. The cases that the Court had us consider yesterday, in those cases, none of the witnesses were available to testify. They did not testify at trial. They were not available. Okay. That answers the second question, whether if the translator is available, that's good enough. But that's not what I asked you. I asked you to assume that the translator was not available, unlike in this case, because it's a logically prior question. Is there a Confrontation Clause problem to begin with? There's no Confrontation Clause problem here, because the witness was available to testify. The district court, in a decision that is available on Westlaw and that we cited to, stated that the Owens court specifically rejected the notion that a witness who can't remember the subject matter of his prior statement is unavailable within the meaning of Crawford and not subject to cross-examination. There is no Confrontation Clause issue here, because the interpreter was available to testify, did testify. The defense chose not to question the interpreter regarding his competence to interpret, regarding motive to mislead. The Nazemian factors apply. Nazemian still survives Crawford. There is a case that the only case that the government could find post-Crawford dealing with an interpreter and the admissibility of translated statements is a case out of the Southern District of New York decided this year. It's U.S. v. Gailani. And the court there did apply Nazemian factors as post-Crawford. In that particular case, they did find that the interpreters were not mere language conduits because the interpreters were Tanzanian police officers. Kagan, did they explain why they did they discuss the Crawford problem?  Not really, Your Honor, I would have to say. But it is a post-Crawford case. The Nazemian factors, we believe, still do apply. We believe the district. Counsel, if Crawford, if we thought that Crawford applied to translators in the same way that Bull Cummings says that the Confrontation Clause applies to lab technicians, would the government have an obligation to, as part of its affirmative case, to put the translator on, or is it, or is the translator merely to be made available if the defense wishes to examine it? Your Honor, I believe. Who has the obligation of bringing the translator into court? Well. After Bull Cummings, who has the obligation of producing the lab technician? Probably the government, Your Honor. As a part of its affirmative case, or just making them available if the defense wants to examine it? Making them available for the defense to. Well, I mean, the discussion in the lab cases is, as I understood it, that, yes, there's an obligation on the government to put them on, but that in many instances it'll be waived by the defendant because they'll know that it's not going to get them anywhere. So in a sense, it's making them available and saying, well, put them on if you want us to put them on. And often they'll say, no, we don't want you to put them on. But is it a big deal, really? I mean, this case sort of shows it isn't a big deal. You put them on. Right. So in Bull Cummings, the defense did not even know that the forensic, the chemist was not testified until the very day of trial. So there was no opportunity to even secure that person's attendance. The chemist was on unpaid leave at that time. And the other thing that's made clear is that there could be a notice requirement in the case law saying that they may have to give some notice that they want him to be put on or something like that. So there might be ways to work it out. Right. I mean, I think that's what Bull Cummings makes clear, because the defense did not know until the very day of trial. The – again, I think we just revert to Nazemian and consider the factors and the applicability of the factors to determine whether the interpreter was a mere language conduit. For hearsay purposes. Right. Right. We always do revert to the fact that harmless – if there is any error, it was harmless. But in this case, we had the interpreter. The interpreter testified. The defense did not question the interpreter at all, did not question him about his language capabilities. That was a part of his job duties at the jail, to interpret for Spanish-speaking defendants. He spoke Spanish his entire life. The – there was no motive to lie or deceive, and the defense never questioned the interpreter regarding that. The defendants relies heavily on Felix Jerez, which, of course, does predate Crawford and predates Nazemian. In that case, the deputy U.S. marshal interviewed a defendant when he was apprehended following an escape. He relied upon a prison interpreter. In that case, however, the deputy U.S. marshal put his notes in writing, and the government introduced the statement of the defendant at trial without having the deputy marshal testify to the substance of the statements, of the written statements. The court in Felix's head has said that the deputy U.S. marshal could have testified about the facts contained in the statement. However, the fact that the written statement was admitted was erroneous. And, of course, this is pre-Crawford law. There was sufficient evidence to convict the defendant in the absence of his statement. The informant testified to his contacts with the defendant, prior drug deals, specifically in September of 2006, some prior deals with him before that date. With respect to the September 2006 transaction, the government rather meticulously presented evidence corroborative of the informant's testimony regarding that transaction. There were toll records. There were cell site records. Is there an argument here of lack of substantial evidence? Yes. We devoted a substantial portion of our brief to the armless. Oh, you mean on the sentencing? Oh, on the sentencing? Where is the discussion of substantial evidence? I'm sorry. That is in our discussion regarding if there was any error, it was harmless. And it was starting at page 33, Your Honor. Oh, I see what you're saying. You said it's not about substantial evidence. It's about harmlessness. Okay. Right. There were hotel records to substantiate the informant's travel from Maui to the mainland and travel to Tulare, which is where the drug transactions occurred. Yes, but to have a harmless confession is almost impossible, no? Well, the evidence did not consist solely of the defendant's admission. And the defendant did not state anything that was not corroborated. As Judge Wanger, the district court said that the evidence was not corroborated. And the fact that the evidence was not corroborated, it's not a sexual fact of having said what happened. It may be corroborated if the evidence comes in, but if it doesn't come in, it's a lot weaker. Well, thank you, Your Honor. Just a few brief remarks on the harmless error argument. My recollection is the informant's testimony was challenged and there were things brought out to question it. And I think it's not harmless error when this admission comes in because it sort of takes the heat off of the credibility question with the informant. We don't know what the jury, how the jury arrived at its decision, but the evidence that came in through Mr. Santa Cruz's statement I think is very pivotal. The other question I wanted to pose is, given that the interpreter could not remember anything, how do we solve the problem of the foundation for Miranda? A foundational requirement for that statement coming in was the Miranda warning, yet all we have here is a police officer saying, well, I gave them a card to read, but he doesn't know if they were reading it correctly. Well, it seems to me, again, you're not doing business with Owens, but conceptually, your real problem is with the admission of the agent's testimony about what the translator said Santa Cruz said. And the question is really whether you can you have some problem with that, that constitutional problem that you can come forward with, which is sort of a different issue than whether the translator testifies. In other words, your problem is that you're saying how do we know that what the agent said the translator's – what the agent said the translator said that Santa Cruz said is accurate. Well, you can certainly cross-examine the agent about whether he's accurately reporting what Santa Cruz said, but you can't cross-examine the agent about whether, in fact, it's what Santa Cruz said because he doesn't know what Santa Cruz said. So the question is, is that a confrontation clause problem? Well, this kind of gets back to the confrontation part, though. The officer can't tell you, can't tell anybody, can't be cross-examined on what the interpreter said regarding Miranda, not only the questions or the answers. And that's a foundational requirement for the statement to come in is that the Miranda was met. Again, I fall back on the burden, the question of whose obligation is it. It's the government's burden to lay the foundation, to lay the basis for this evidence coming in, and I think they didn't do it. Okay. Your time is up. Thank you very much. Thank you to both counsel in the United States v. Santa Cruz.
judges: Wallace, Berzon, Bybee, Cjj